Kelsey Gordon, cestui que vie
c/o 15626 Snowbush Lane
(City of) Portland
(State of) Oregon [97229]
Propria Persona
Sui Juris



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRIC OF MASSACHUSETTS

| | |
|---|---|
| Kelsey Gordon<br><br>   Plaintiff<br><br>v.<br><br>ALEXION PHARMACEUTICALS, INC,<br><br>   Defendant | DOCKET NO. _____<br><br><br><br><br>**COMPLAINT<br>WITH JURY DEMAND** |
| | |

## I.   INTRODUCTION

1. This action seeks redress for Alexion Pharmaceuticals, Inc.'s violation of federal civil rights laws, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, which prohibits employment discrimination on the basis of religion, as well as violations of informed consent laws related to the mandatory COVID-19 vaccination policies enforced by Alexion.

2. Religious persecution, in the form of systematic mistreatment or oppression based on religious beliefs or practices, is prohibited under federal law, including Title VII. This law ensures that employees are protected from discrimination, including the denial of reasonable accommodations for sincerely held religious beliefs.

3. It may seem unthinkable that a modern employer would blatantly refuse to accommodate religious objections to a workplace policy. However, in this case, Alexion Pharmaceuticals,

Inc. has done just that, making a blatant refusal to accommodate Plaintiff's sincerely held religious beliefs.

4. This policy directly violates Title VII, which requires employers to provide reasonable accommodations for employees' religious beliefs, unless doing so would cause undue hardship to the employer, which in none of Alexion's responses, was there ever stated any specific, or even broadly articulated claim of undue hardship.

5. Title VII and the First Amendment to the U.S. Constitution both affirm the right of employees to practice their faith without fear of discrimination or retaliation in the workplace, particularly when it comes to religious objections to medical interventions.

6. This case revolves around Plaintiff's right to practice her religious beliefs openly and without the threat of losing her job due to Alexion's refusal to accommodate her religious objections to vaccination.

7. Title VII is one of the most robust federal statutes prohibiting employment discrimination, protecting individuals based on their religion, among other characteristics.

8. The First Amendment to the U.S. Constitution guarantees the free exercise of religion and the right to seek religious accommodations in employment without fear of retaliation or termination.

9. Plaintiff brings this action to redress Alexion Pharmaceuticals, Inc.'s unlawful discrimination and its refusal to provide a reasonable accommodation for her sincerely held religious beliefs.

10. Plaintiff served as a **Patient Liaison** for Alexion Pharmaceuticals, Inc., working fully remotely. Her role did not involve any direct patient care or physical presence in the workplace, further reducing any purported risk of COVID-19 transmission that Alexion sought to mitigate with its vaccine mandate.

11. Throughout her employment, Plaintiff requested a religious exemption to the mandatory COVID-19 vaccination policies imposed by Alexion. Her request was based on her sincerely held religious beliefs, which were entitled to protection under federal law.

12. In a good faith effort to reach a resolution, Plaintiff offered to accept the vaccine under special conditions. She proposed that Alexion's officers, along with either Alexion's licensed medical

personnel or medical personnel who supported Alexion's vaccination policy, complete specific interrogatories related to the vaccine's safety and efficacy. These interrogatories were to be answered within the boundaries of lawful informed consent, and the personnel involved were required to sign off on the safety and efficacy of the COVID-19 vaccine. This proposal was in line with her right to be fully informed about medical treatments as required under informed consent laws.

13. Alexion Pharmaceuticals, Inc. refused at all costs to provide the information requested by Plaintiff and declined to engage in the lawful informed consent process. This refusal violated Plaintiff's rights under federal informed consent laws, which mandate that individuals be provided with sufficient information to make a voluntary and informed decision regarding medical interventions, particularly in regard to vaccines.

14. Despite Alexion's strict vaccine mandate, Plaintiff was allowed to attend multiple in-person training sessions at Alexion's headquarters in Boston, Massachusetts, without being vaccinated. If Alexion was genuinely concerned about reducing the risk of transmission as part of its justification for the vaccine mandate, it would not have permitted Plaintiff, an unvaccinated employee, to participate in these on-site trainings. This inconsistency casts doubt on the necessity of the mandate, particularly in light of her remote work status.

15. Furthermore, Alexion repeatedly changed its vaccine mandate deadline. However, this deadline was extended multiple times before Plaintiff was ultimately terminated on October 20, 2023 for her refusal to comply with the mandate. The arbitrary shifting of deadlines further undermines Alexion's claim that the vaccine mandate was a necessary and immediate requirement to reduce workplace transmission risks.

16. By refusing to accommodate Plaintiff's religious beliefs, rejecting her good faith effort to engage in lawful informed consent, and inconsistently enforcing its vaccination policy, Alexion Pharmaceuticals, Inc. has violated Title VII of the Civil Rights Act of 1964 and federal informed consent laws. Alexion's actions have caused Plaintiff emotional and professional harm, depriving her of her right to practice her faith and to make informed decisions regarding her health and employment.

## II.    PARTIES AND JURISDICTION

17. **Plaintiff** is a resident of Portland, Oregon, and a citizen of the United States.

18. **Defendant** Alexion Pharmaceuticals, Inc. is a for-profit corporation headquartered at 121 Seaport Blvd., Boston, MA 02210.

19. **Jurisdiction and Venue**: This action is properly filed in the United States District Court for the District of Massachusetts, as Defendant Alexion Pharmaceuticals, Inc. is headquartered in Boston, Massachusetts, and the actions giving rise to this claim substantially involve the conduct and policies instituted at Defendant's Massachusetts headquarters. The District of Massachusetts is an appropriate and proper venue under 28 U.S.C. § 1391(b)(1) and (b)(2).

## III.    CLASS ALLEGATIONS

20. Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23, as representatives of a proposed class of employees and prospective employees of Alexion Pharmaceuticals, Inc., who were denied religious exemptions to the company's COVID-19 vaccination mandates.

21. The proposed class consists of all current and former employees and applicants who sought religious exemptions from Alexion Pharmaceuticals, Inc.'s mandatory vaccination policies and were denied such exemptions during the relevant period, beginning two years prior to the filing of this Complaint, or as applicable under the statute of limitations.

22. The members of the proposed class are readily ascertainable and can be identified through Alexion Pharmaceuticals, Inc.'s records of exemption requests and decisions regarding those requests.

23. The members of the class are possibly so numerous that joinder of all members is impracticable. Upon information and belief, Alexion Pharmaceuticals, Inc. has possibly denied religious exemptions to dozens, if not hundreds, of employees and prospective employees across its operations.

24. There are common questions of law and fact that predominate over any questions affecting only individual members of the class, including, but not limited to: a. Whether Alexion Pharmaceuticals, Inc. violated Title VII of the Civil Rights Act by refusing to accommodate religious exemption requests; b. Whether Alexion Pharmaceuticals, Inc. failed to engage in an interactive process with employees seeking religious accommodations; c. Whether Alexion

Pharmaceuticals, Inc. applied inconsistent or discriminatory standards in denying religious exemptions while allowing other types of exemptions; d. Whether Alexion Pharmaceuticals, Inc. violated federal informed consent laws by refusing to provide sufficient information to employees making vaccine-related decisions.

25. The claims of Plaintiff are typical of the claims of the proposed class, as she and all class members were subjected to the same unlawful practices by Alexion Pharmaceuticals, Inc., including the refusal to accommodate religious beliefs and the enforcement of mandatory vaccination policies without adequate informed consent.

26. Plaintiff will fairly and adequately protect the interests of the class, as she has no interests that are antagonistic to those of the class, and she is represented by competent legal counsel experienced in employment and civil rights litigation.

27. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of individual actions by class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Alexion Pharmaceuticals, Inc.

28. The class members have been uniformly impacted by Alexion Pharmaceuticals, Inc.'s discriminatory practices and share a common interest in ensuring that their rights under Title VII and informed consent laws are protected.

29. Class-wide injunctive relief is appropriate, as Alexion Pharmaceuticals, Inc. has acted on grounds generally applicable to the class, making final declaratory and injunctive relief proper with respect to the class as a whole.

## IV.    FACTUAL HISTORY

30. Plaintiff was hired by Alexion Pharmaceuticals as a Patient Liaison on July 10, 2023. On October 1, 2023, her role was expanded, combining two roles under the title "One Source Patient Support Specialist." The position was fully remote.

31. In July 2023, Plaintiff received a link from Alexion Pharmaceuticals stating that unvaccinated employees could travel and attend in-person training without restrictions. Following this, she traveled to Boston for training from July 23 to July 28, 2023.

32. On July 17, 2023, Plaintiff informed Alexion of her religious beliefs and submitted a Religious Reasonable Accommodation Request Form to request exemption from the COVID-19 vaccination requirement.

33. Some of the scriptures articulated in correspondence with the Defendant that validate and support Plaintiff's sincerely held beliefs are as follows:

*"Now when Jesus heard it, he said unto them, the whole need not the Physician, but they that are sick." - Matthew 9:12*

*"For ye shall serve the Lord your God, and he shall bless thy bread and thy water, and I will take all sickness away from the midst of thee." – Exodus 23:25*

*"Every word of God is pure: he is a shield to those that trust in him." - Proverbs 30:5*

*"Which forgiveth all thine iniquity, and healeth all thine infirmities." – Psalm 103:3*

*"Who so dwelleth in the secret of the most High, shall abide in the shadow of the Almighty. I will say unto the Lord, O my hope, and my fortress: he is my God, in him will I trust. Surely I will deliver thee from the snare of the hunter, and from the noisome pestilence. He will cover thee under his wings, and thou shalt be sure under his feathers: his truth shall be thy shield and buckler. Thou shalt not be afraid of the fear of the night: nor of the arrow that flieth by day: Nor of the pestilence that walketh in the darkness: nor of the plague that destroyeth at noon day." – Psalm 91:1-6*

*"Surely, he hath born our infirmities, and carried our sorrows, yet we did judge him as plagued and smitten of God, and humbled. But he was wounded for our transgressions: he was broken for our iniquities: the chastisement of our peace was upon him, and with his stripes are we healed." – Isaiah 53:4-5*

*"And said, If thou wilt diligently hearken, O Israel, unto the voice of the Lord thy God, and wilt do that which is right in his sight, and wilt give ear unto his commandments, and keep all his ordinances, then will I put none of these diseases upon thee, which I brought upon the Egyptians: for I am the Lord that healeth thee." – Exodus 15:26*

*"For I will restore health unto thee, and I will heal thee of thy wounds, saith the Lord, because they called thee, The castaway, saying, This is Zion whom no man seeketh after." – Jeremiah 30:17*

*"Is any sick among you? Let him call for the Elders of the Church, and let them pray for him, and anoint him with oil in the Name of the Lord. And the prayer of faith shall save the sick, and the Lord shall raise him up: and if he have committed sins, they shall be forgiven him." – James 5:14-15*

34. On July 21, 2023, Alexion responded, requesting additional information by July 28, 2023. This included inquiries about Plaintiff's place of worship, the duration of her membership, and any religious texts or letters from a religious leader that could clarify her beliefs. The response also sought confirmation of her consumption habits regarding processed foods, alcohol, cigarettes, tattoos, and legal recreational drugs.

35. By July 28, 2023, Plaintiff submitted an Affidavit and Declaration with answers to the respondent's questions, but received no direct rebuttal to her citations or arguments.

36. From August 6 to August 11, 2023, Plaintiff again traveled to Boston for training with Alexion's awareness of her unvaccinated status. She noted her previous vaccination exemption with her former employer, Providence Health and Services, for religious reasons.

37. On August 18, 2023, Alexion notified Plaintiff that COVID-19 vaccination was required for all employees, citing undue hardship as the reason for denying her exemption. She was given until August 25, 2023, to receive the first vaccine dose or face termination.

38. On August 25, 2023, Plaintiff emailed Alexion a Notice of Rights and Memorandum of Law, demanding a response and rebuttal to her arguments. Alexion replied with a standard response, lacking the specific rebuttals she sought.

39. On the morning of Monday, August 28th, Plaintiff logged in to her work computer and work phone to find she was not actually terminated, and was still an active employee in the system with access to everything. Plaintiff reached out to her manager who reached out all morning to HR herself. At 11:57am PST (2:57pm EST – Alexion is located in Boston, MA) I received the following email from "US HR" (Alexion HR):

*"Dear Kelsey,*

*Apologies as the email you received initially had the wrong exit date. Please see the correct date below."*

Technically, Plaintiff should have been officially terminated as of August 25th, but still had full access to her work login and information. Subsequently, Plaintiff's manager reached out to HR, and in the late work hours of Monday they emailed Plaintiff letting her know they *"sent the wrong exit date"* amended to then be October 6, 2023.

40. On September 22, 2023, Plaintiff sent a detailed packet to Alexion's CEO and General Counsel, citing state and federal informed consent laws. She requested certified physicians to address liability concerns regarding adverse effects of the vaccine.

41. Alexion subsequently updated Plaintiff's vaccination and termination deadlines, setting a new first-dose deadline for September 29, 2023, with termination on October 6, 2023, if unvaccinated.

42. On October 12, 2023, Alexion revised the deadlines again, setting October 13, 2023, as the first-dose deadline and October 20, 2023, as the final termination date.

43. On October 20, 2023, Plaintiff was unable to access her work account and was officially terminated, though she did not receive a termination letter.

44. Plaintiff filed a Charge of Discrimination with the EEOC, claiming unlawful employment discrimination based on her religion, in violation of Title VII of the Civil Rights Act of 1964 and relevant Massachusetts state laws.

45. Subsequently, The EEOC Commission determined that "it was possible for Respondent (Defendant) to accommodate the Charging Party without imposing an undue hardship. Respondent did not contest that the Charging Party's position was fully remote, as she alleged in her charge. Upon finding, there is reason to believe that violations have occurred."

46. Plaintiff ultimately faced a difficult choice: either abandon her religious beliefs by complying with the vaccination mandate or lose her job. She chose to uphold her beliefs, resulting in the termination of her employment.

## V.    COUNT OF CIVIL VIOLATIONS/INFRACTIONS

### COUNT I
### RELIGIOUS DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

45. Plaintiff claims that Alexion Pharmaceuticals violated her rights under Title VII by engaging in religious discrimination when they denied her exemption from the COVID-19 vaccine mandate despite her documented and sincerely held religious beliefs.

- **Federal Statutes and Codes:**

  - **Title VII of the Civil Rights Act of 1964** (42 U.S.C. § 2000e-2): Title VII prohibits employment discrimination based on religion and mandates reasonable accommodation for employees' religious beliefs unless such accommodation imposes an undue hardship on the employer.

  - **29 C.F.R. § 1605.2:** This regulation requires employers to accommodate employees' religious practices, barring undue hardship.

- **Relevant Case Law:**

  - *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977): The Supreme Court established that an employer must show more than a de minimis cost to claim undue hardship in denying religious accommodation.

  - *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015): Reinforced that failing to accommodate religious practices, even absent explicit employer knowledge of religious beliefs, is actionable under Title VII.

  - *Thomas v. Review Bd.*, 450 U.S. 707 (1981): The Supreme Court held that religious beliefs do not need to be acceptable, logical, or consistent to others to merit protection.

- **Application to Plaintiff's Case:** Plaintiff documented her beliefs and provided specific evidence supporting her religious views, including scriptural references and her previous vaccination exemption from another employer. Despite this, Alexion denied her exemption request without sufficient justification, failing to show that her accommodation would cause undue hardship.

**COUNT II**
**FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS UNDER TITLE VII**

46. Plaintiff claims that Alexion unlawfully failed to provide a reasonable accommodation for her religious beliefs by denying her request to work remotely, a condition consistent with her prior role and minimal operational disruption.

- **Federal Statutes and Codes:**

    o **42 U.S.C. § 2000e(j):** Defines religion to include all aspects of religious observance and practice, not just belief, and mandates that an employer must attempt reasonable accommodations unless it would result in undue hardship.

- **Relevant Case Law:**

    o *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1986): Employers must attempt reasonable accommodation but are not required to adopt an accommodation that causes undue hardship.

    o *Equal Employment Opportunity Comm'n v. Publix Super Markets, Inc.*, No. 8:16-cv-02185 (M.D. Fla. 2017): The court emphasized the need for employers to engage in discussions with employees to explore possible accommodations.

    o *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126 (1st Cir. 2004): An employer must show that providing accommodation would interfere with normal business operations to deny it under undue hardship.

- **Application to Plaintiff's Case:** Plaintiff's remote position posed minimal, if any, operational burdens, thus failing to meet the undue hardship threshold for denial of accommodation.

**COUNT III:**
**RETALIATION IN VIOLATION OF TITLE VII**

47. Alexion's decision to terminate Plaintiff constitutes unlawful retaliation, as she was allegedly terminated for exercising her rights to seek religious accommodation.

- **Federal Statutes and Codes:**

- o **42 U.S.C. § 2000e-3(a)**: Title VII prohibits employers from retaliating against an employee who exercises their right to religious accommodation or opposes discriminatory practices.

- **Relevant Case Law**:

  - o _Burlington N. & Santa Fe Ry. Co. v. White_, 548 U.S. 53 (2006): The Supreme Court held that Title VII retaliation protections extend to any action likely to dissuade a reasonable worker from making or supporting a discrimination claim.

  - o _Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn._, 555 U.S. 271 (2009): Confirms that employees are protected from retaliation when they oppose discriminatory practices.

- **Application to Plaintiff's Case**: Plaintiff was terminated following her religious accommodation request and subsequent assertion of her rights. The proximity in time between her request and her termination supports an inference of retaliatory action, particularly given the lack of an adequate rebuttal by Alexion.

## COUNT IV:
## VIOLATION OF THE FIRST AMENDMENT (FREE EXERCISE CLAUSE)

48. Plaintiff asserts that Alexion's mandatory vaccination policy infringes upon her First Amendment rights by placing a substantial burden on her free exercise of religion.

- **Federal Statutes and Codes**:

  - o **Religious Freedom Restoration Act (RFRA)**, 42 U.S.C. § 2000bb: RFRA prohibits government entities from substantially burdening an individual's exercise of religion without a compelling government interest achieved by the least restrictive means.

- **Relevant Case Law**:

  - o _Sherbert v. Verner_, 374 U.S. 398 (1963): Established that the government must not substantially burden religious practices without a compelling interest.

- o *Employment Division v. Smith*, 494 U.S. 872 (1990): While generally applicable laws may incidentally affect religious practice, laws targeting specific practices may violate the Free Exercise Clause.

- o *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006): The government must meet strict scrutiny when RFRA is invoked.

- **Application to Plaintiff's Case:** Plaintiff argues that, as a government contractor, Alexion has a duty to respect her religious beliefs and that the vaccine mandate imposes a substantial burden on her religious practice, thus violating her First Amendment rights.

### COUNT V:
### DECLARATORY JUDGMENT (28 U.S.C. § 2201)

49. Plaintiff seeks a declaratory judgment to affirm her rights under Title VII, RFRA, and the First Amendment, asserting that her termination for refusing vaccination based on religious beliefs was unlawful.

- **Federal Statutes and Codes:**

  - o **Declaratory Judgment Act** (28 U.S.C. § 2201): Authorizes federal courts to issue a declaratory judgment to clarify the legal rights and relationships of parties.

- **Relevant Case Law:**

  - o *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007): Establishes that declaratory judgments are appropriate to clarify legal rights and obligations before a conflict escalates.

  - o *Steffel v. Thompson*, 415 U.S. 452 (1974): Allows declaratory judgments to establish and secure legal rights when future enforcement could violate constitutional or statutory protections.

- **Application to Plaintiff's Case:** Plaintiff seeks to affirm her rights to a reasonable accommodation without fear of retaliation. A declaratory judgment would clarify her legal rights and ensure protection from similar violations in the future.

## COUNT VI:
## VIOLATION OF INFORMED CONSENT LAWS

50. Plaintiff argues that Alexion's vaccine mandate violated her right to informed consent by compelling vaccination without complete and transparent information on the vaccine's risks, particularly in a coercive employment context.

- **Federal Statutes and Codes:**

    o **45 C.F.R. § 46.116** (General Requirements for Informed Consent): Mandates that individuals be fully informed of the risks and benefits of any medical intervention, particularly in the context of emergency use or investigational products.

    o **21 U.S.C. § 360bbb-3** (Emergency Use Authorization): Requires that individuals must be informed of the option to accept or refuse administration of any emergency-authorized product, which includes COVID-19 vaccines.

- **Relevant Case Law:**

    o *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990): Established a constitutional right to refuse unwanted medical treatment under the Due Process Clause, reinforcing bodily autonomy and informed consent.

    o *Washington v. Harper*, 494 U.S. 210 (1990): Recognized that individuals have a constitutionally protected liberty interest in avoiding the involuntary administration of medication.

    o *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004): Held that military personnel could not be compelled to take an unapproved anthrax vaccine without informed consent, underscoring that individuals must be informed and permitted to refuse under EUA conditions.

- **Application to Plaintiff's Case:** Plaintiff contends that Alexion required her to take an EUA vaccine without proper informed consent. Despite providing notice of her objections, Alexion allegedly failed to provide full risk disclosure and rejected her requests to assume liability for potential adverse effects, thus coercing her into vaccination under threat of job loss.

## VI.    DEMAND FOR ANSWERS TO INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff serves the following requests for answers to interrogatories with this Complaint. Responses are due within the time calculated under Rule 33(b)(2):

1. Identify all persons involved in the development of the policy and/or policies, decision and/or decisions whereby Plaintiff's request for religious exemption/accommodation was denied.

2. For each person identified in response to Interrogatory 1, set forth: a) their job title; b) the dates of their involvement; c) their responsibilities with respect to the development of the policy and/or policies, decision and/or decisions whereby Plaintiff's request for religious exemption/accommodation was denied.

3. For the calendar year of 2022: a. Identify the number of Alexion Pharmaceuticals, Inc. employees who applied for medical exemptions from any vaccination requirements. b. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who applied for medical exemptions from any vaccination requirements. c. Identify the number of Alexion Pharmaceuticals, Inc. employees who applied for religious exemptions from any vaccination requirements. d. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who applied for religious exemptions from any vaccination requirements.

4. For the calendar year of 2023: a. Identify the number of Alexion Pharmaceuticals, Inc. employees who applied for medical exemptions from any vaccination requirements. b. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who applied for medical exemptions from any vaccination requirements. c. Identify the number of Alexion Pharmaceuticals, Inc. employees who applied for religious exemptions from any vaccination requirements. d. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who applied for religious exemptions from any vaccination requirements.

5. For the calendar year of 2022: a. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for medical exemptions from any vaccination

requirements. b. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who were determined to qualify for medical exemptions from any vaccination requirements. c. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for religious exemptions from any vaccination requirements. d. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who were determined to qualify for religious exemptions from any vaccination requirements.

6. For the calendar year of 2023: a. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for medical exemptions from any vaccination requirements. b. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who were determined to qualify for medical exemptions from any vaccination requirements. c. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for religious exemptions from any vaccination requirements. d. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who were determined to qualify for religious exemptions from any vaccination requirements.

7. For the calendar year of 2022: a. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for medical accommodation from any vaccination requirements. b. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who were determined to qualify for medical accommodation from any vaccination requirements. c. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for religious accommodation from any vaccination requirements. d. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who were determined to qualify for religious accommodation from any vaccination requirements.

8. For the calendar year of 2023: a. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for medical accommodation from any vaccination requirements. b. Identify the number of Alexion Pharmaceuticals, Inc. prospective employees who were determined to qualify for medical accommodation from any vaccination requirements. c. Identify the number of Alexion Pharmaceuticals, Inc. employees who were determined to qualify for religious accommodation from any vaccination requirements. d. Identify the number of Alexion Pharmaceuticals, Inc.

prospective employees who were determined to qualify for religious accommodation from any vaccination requirements.

9. Identify all persons who applied for a medical exemption from a vaccination requirement in 2024.

10. Identify all persons who applied for a religious exemption from a vaccination requirement in 2024.

11. Identify all persons who were told by Alexion Pharmaceuticals, Inc. that "Alexion Pharmaceuticals, Inc. is not accepting Religious exemptions this year," whether by email, other writing, or orally.

12. Identify all documents and communications in any form, whether paper or electronic, between Defendant and any individuals identified in response to Interrogatory 11.

## VII.    DEMAND FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff requests that Defendant, Alexion Pharmaceuticals, Inc., produce the following documents for inspection and copying within the time required under Rule 34(b)(2):

1. Produce all documents, including but not limited to emails, texts, paper documents, electronic files, or other communications relating or referring to the Plaintiff, including any records or communications concerning the Plaintiff's request for a religious exemption from vaccination.

2. Produce all documents, including but not limited to emails, texts, paper documents, electronic files, or other communications, relating to Alexion Pharmaceuticals, Inc.'s policy and/or policies, decision and/or decisions to refuse and/or or approve Kelsey Gordon's religious exemption.

3. Produce all documents, including emails, texts, memoranda, policies, internal communications, or directives, that set forth or discuss the implementation or enforcement of Alexion Pharmaceuticals, Inc.'s policy requiring COVID-19 vaccinations, including communications sent to employees regarding this policy.

4.  Produce any documents or communications referenced in, relied upon, or reviewed during the preparation of Defendant's responses to Plaintiff's interrogatories.

5.  Produce any documents or communications, whether paper or electronic, including emails, texts, or meeting notes, that discuss or relate to any financial or other incentive, either per employee or as a collective whole, provided to Alexion Pharmaceuticals, Inc.'s administrative personnel for encouraging or requiring employees to receive the COVID-19 vaccine.

6.  Produce any documents, including internal reports, analyses, or reviews, that evaluate the effectiveness, impact, or compliance with Alexion Pharmaceuticals, Inc.'s vaccination policies, including records tracking religious exemption requests, medical exemption requests, and the approval or denial of such requests.

7.  Produce all documents, including meeting minutes, presentations, or internal communications, related to any discussions or decisions regarding Alexion Pharmaceuticals, Inc.'s policies or practices concerning exemptions from mandatory vaccinations, whether religious or medical, for the years 2022 through 2024.

8.  Produce all written or electronic communications, whether in the form of emails, texts, memoranda, or otherwise, between Defendant's human resources, legal, or administrative personnel and any employees or prospective employees regarding religious or medical exemptions from vaccinations.

9.  Produce all records or documentation reflecting the number of employees who were denied religious exemptions and the rationale for the years 2022 through 2024.

10. Produce any communications or documents, whether internal or external, discussing legal advice or recommendations concerning the implementation or alteration of vaccination policies at Alexion Pharmaceuticals, Inc. for the years 2022 through 2024.

## VIII.    REQUEST FOR RELIEF

Pursuant to Federal Rule of Civil Procedure 8(a)(3) and 54(c), Plaintiff seeks relief arising from discriminatory and retaliatory actions by Alexion Pharmaceuticals, Inc., in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and applicable state laws. The

Plaintiff respectfully petitions this Court to award compensatory damages, punitive damages, equitable relief in the form of front pay and benefits, and tax-related compensations.

## CLAIMS FOR COMPENSATORY DAMAGES - $300,000.00
## EMOTIONAL DISTRESS, PAIN AND SUFFERING

Plaintiff seeks $300,000.00 in compensatory damages for emotional distress, pain, and suffering, as the adverse employment action has resulted in significant emotional harm. Under Title VII, damages for emotional distress are recoverable if the plaintiff provides credible evidence of substantial harm (*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001)). Here, Plaintiff alleges severe emotional hardship as a result of unjust termination following a conflict involving her religious beliefs and Alexion's vaccine mandate. In support of such a claim, Plaintiff highlights her ten-year career in nursing, during which she received numerous "Daisy Awards" recognizing her compassionate service. Her forced termination disrupted not only her career but also her psychological well-being and family life.

## LOSS OF OPPORTUNITY AND INJURY TO REPUTATION

The Plaintiff's termination deprived her of professional growth, work-life balance, and stability for her family, specifically her role as a single mother with responsibilities to her two children. The United States Supreme Court has held that the loss of professional opportunity due to discriminatory practices can support claims for compensatory damages (see *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 850 (2001)).

## CONSEQUENTIAL DAMAGES

Plaintiff additionally seeks compensation for consequential damages, including her family's altered living arrangements due to her termination and subsequent return to a position with non-ideal hours. The impact of this change in employment further disrupted family dynamics and caused additional economic and emotional strain.

## TAX CONSEQUENCE ADJUSTMENT - $200,000.00

Plaintiff requests $200,000.00 in tax consequence relief. In line with EEOC guidelines, adjustments are justified where awards may result in increased tax burdens (see 26 U.S.C. § 62(a)). Courts have discretion to grant such relief where required to make the claimant whole, as specified in *Rivera v. Baker West, Inc.*, 430 F.3d 1253, 1262 (9th Cir. 2005).

## PUNITIVE DAMAGES

Punitive damages are warranted due to Defendant's willful disregard of Plaintiff's rights under Title VII. As described in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 538 (1999), punitive damages are recoverable where the employer has acted "with malice or with reckless indifference" to the federally protected rights of the employee. Alexion's behavior—including coercive tactics and disregard for Plaintiff's sincere religious beliefs—demonstrates a level of willful ignorance warranting punitive measures.

## EQUITABLE RELIEF - FRONT PAY OF $520,100.00
## FRONT PAY CALCULATION

Plaintiff requests $520,100.00 in front pay, calculated over a 15-year period. Front pay compensates for the Plaintiff's future loss of benefits, promotions, and other earnings, in line with Pollard v. E.I. du Pont de Nemours & Co., which confirms that Title VII's "make-whole" remedy can encompass front pay where reinstatement is not feasible (Pollard, 532 U.S. at 848).

## LOST BENEFITS

At the time of her termination, Plaintiff was entitled to a bonus and stock incentive package totaling 22% of her base salary. The breakdown for future earnings, based on her past performance and industry standards, details a conservative estimate of her lost future benefits and promotions. Courts frequently award front pay and other benefits in cases where future advancement and opportunities are significantly hindered due to employer retaliation or discrimination (see *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1157 (9th Cir. 1999)).

## DEMAND FOR EQUITABLE AND INJUNCTIVE RELIEF

Plaintiff seeks an injunction against further discriminatory policies by Defendant, particularly those that fail to accommodate religious beliefs in line with Title VII standards. Courts maintain the authority to issue injunctive relief when systemic policies contribute to discriminatory practices, as affirmed in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417-18 (1975).

## ATTORNEYS' FEES AND COSTS

As permitted by 42 U.S.C. § 2000e-5(k), Plaintiff requests reasonable attorneys' fees and litigation costs. Prevailing plaintiffs in discrimination cases are generally entitled to such awards (*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-17 (1978)).

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her the following relief:

1. Compensatory damages in the amount of $300,000.00 for emotional distress and harm to reputation.

2. Tax relief of $200,000.00 to address the tax consequences of the award.

3. Punitive damages in an amount deemed appropriate by the Court.

4. Front pay and lost benefits totaling $520,100.00.

5. Injunctive relief against Alexion Pharmaceuticals, Inc.'s discriminatory policies.

6. Attorneys' fees and costs.

## IX.    DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable

## X.    FEDERAL RULE 11 CERTIFICATION

I hereby certify that the claims raised in this complaint are not the subject of any other pending action or arbitration. The Plaintiff is not aware of any other party who should be joined to this action pursuant to Federal Rule of Civil Procedure 19, or who is subject to joinder under Rule 20 due to potential liability arising from the same set of transactional facts.

## XI.    FEDERAL RULE COMPLIANCE CERTIFICATION

I certify that confidential personal identifiers have been redacted from all documents submitted to the Court and will continue to be redacted from any future submissions, in compliance with Federal Rule of Civil Procedure 5.2.

## XII.    PRO SE LITIGANT DISCLAIMER AND NOTICE FOR LENIENCY

The Plaintiff respectfully notifies the Court that she is proceeding in this action *pro se* and, therefore, requests that she be afforded the fair and just leniency customarily granted to self-represented litigants. In alignment with established federal legal standards, the Plaintiff asks for reasonable latitude to correct, amend, or otherwise cure any deficiencies in her pleadings, motions, or other filings to ensure that her claims are evaluated on their merits rather than on procedural technicalities.

Federal courts have long recognized the need for such leniency toward *pro se* litigants, rooted in the principle that justice should not be unduly obstructed by technical procedural barriers. Rule 8(e) of the Federal Rules of Civil Procedure emphasizes that "[p]leadings must be construed so as to do justice," underscoring the courts' responsibility to interpret pleadings by *pro se* litigants in a manner that affords them a fair opportunity to be heard.

Furthermore, Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend pleadings should be "freely give[n]…when justice so requires." This standard is particularly significant in the context of *pro se* litigants, as courts have acknowledged that individuals without formal legal training may inadvertently submit pleadings that lack technical precision. Recognizing this, the Supreme Court has held in *Foman v. Davis*, 371 U.S. 178, 182 (1962), that courts should grant leave to amend in the interest of justice, especially where the amendment could address inadvertent deficiencies that do not prejudice the opposing party.

Relevant federal case law has further clarified the courts' role in interpreting the pleadings of *pro se* litigants liberally. In *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Supreme Court stated that *pro se* filings "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Similarly, in *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the Court emphasized that *pro se* complaints are to be liberally construed, and procedural flexibility should be afforded to ensure that technical errors do not obscure the legitimate grievances being presented.

In line with these principles, the Plaintiff respectfully requests that, should any procedural or substantive deficiencies be identified in her filings, she be allowed the opportunity to address and correct these issues. This request for leniency aligns with the due process rights of *pro se* litigants as recognized by federal courts and supports the fundamental notion that "justice is better served when it reaches the merits of the case rather than when it is barred at the threshold" (*Foman v. Davis*, 371 U.S. at 181-82).

The Plaintiff, therefore, respectfully submits that, as a *pro se* litigant, she should be granted reasonable leniency in the interpretation and technical scrutiny of her submissions and be permitted a fair opportunity to amend or correct any potential errors in her pleadings and filings to ensure her claims are fully and justly considered by this Court.

## XIII.    <u>CONCLUSION</u>

In conclusion, Plaintiff presents this complaint with a demand for a jury trial in the United States District Court for the District of Massachusetts, asserting multiple violations of her civil rights by Defendant Alexion Pharmaceuticals, Inc. Plaintiff contends that Alexion's actions reflect a pattern of religious discrimination, failure to accommodate sincerely held religious beliefs, and unlawful retaliation under Title VII of the Civil Rights Act of 1964. She argues that Alexion's imposition of a strict vaccination mandate—without a reasonable accommodation process—contravened both federal protections against religious discrimination and informed consent laws designed to uphold individual autonomy in medical decisions.

The Plaintiff was employed as a Patient Liaison, a fully remote role, which involved no direct contact with patients or colleagues that might necessitate vaccination for COVID-19 to prevent workplace transmission. Despite her remote work status, Plaintiff was still subject to Alexion's vaccine mandate. She repeatedly sought a religious exemption based on her sincere beliefs, supported by scriptural references and her prior exemption from vaccination mandates at another employer. However, Alexion denied her requests, failed to demonstrate any undue hardship that would justify such denial, and refused to engage meaningfully in an interactive process to consider her accommodation request.

Moreover, Plaintiff argues that Alexion's enforcement of the vaccination policy was inconsistent, as evidenced by their allowance of her attendance at multiple in-person training sessions despite her unvaccinated status. This inconsistency undermines Alexion's claimed justifications for a strict mandate and highlights the arbitrariness of the company's position, which ultimately led to her termination on October 20, 2023. Plaintiff further asserts that the repeated shifting of mandate deadlines, paired with Alexion's refusal to address her informed consent concerns regarding the COVID-19 vaccine, exacerbated the harm she experienced and underscores a retaliatory motive behind her termination.

This complaint seeks substantial relief to address the financial, emotional, and professional harm Plaintiff alleges she has suffered as a result of Alexion's actions. Specifically, she requests compensatory damages for emotional distress, pain, and suffering caused by the abrupt end to her career and the reputational harm inflicted. In addition, Plaintiff seeks punitive damages to hold Alexion accountable for its alleged willful disregard of her federally protected rights. She also

seeks tax consequence adjustments to offset the potential burdens of any financial award and equitable relief, including front pay, to address the disruption to her career trajectory.

Furthermore, Plaintiff requests injunctive relief to prevent Alexion from continuing policies that disregard religious beliefs in the workplace, as well as attorneys' fees and costs associated with pursuing this action. Through this case, Plaintiff aims not only to seek justice for herself but also to establish protections for other employees facing similar forms of discrimination and retaliation based on religious beliefs.

This case brings to light vital issues concerning the balance between workplace policies—particularly health mandates—and the individual rights of employees to practice their religious beliefs without fear of punitive measures. By denying Plaintiff's requests for accommodation, disregarding informed consent obligations, and terminating her employment, Alexion allegedly violated her rights under Title VII, the First Amendment, and federal informed consent laws. Plaintiff's claims thus underscore the essential role of these protections in ensuring that religious beliefs are respected and accommodated within the workplace, especially in cases involving remote employees where minimal risk of transmission exists. This action seeks to affirm the principle that employees should not be forced to choose between their livelihoods and their faith, reinforcing federal protections against religious discrimination and advocating for fair treatment and transparency in employer health mandates.

This Complaint is respectfully submitted, Juris Et De Jure, this 5th day of the Month of November in the Year of Our Lord, Two-Thousand and Twenty-Four (2024).

By: _____ [L.S./SEAL]
   **Kelsey-Michele: Gordon**, cestui que vie
   jura summa imperri, in propria persona, sui juris en lex
   Without recourse, Without prejudice,
   All Rights Retained.

## AFFIDAVIT IN VERIFICATION AND SWORN DECLARATION

I, **Kelsey-Michele: Gordon**, DO HEREBY STATE ALL HEREIN AS TRUTH SWORN UNDER PENALTY OF PERJURY UNDER OREGON AND MASSACHUSETTS STATE LAWS, THE LAWS OF THE UNITED STATES AND RECORD/CLAIMS ACCURACY LAWS [SEE ALSO 28 USC 1746].

1. I AM OVER AGE 18.
2. ALL SET FORTH HEREIN AND ABOVE AND ANNEXED ARE TRUTH AND TO THE EXTENT ANYTHING IS ON INFORMATION AND BELIEF IT IS BELIEVED TO BE TRUTH.
3. IF CALLED TO REPEAT ANY OF IT I WOULD.
4. I AM A FIRST-HAND WITNESS AND VICTIM OF ALL EXPLAINED.
5. THE foregoing averments ARE TRUE AND CORRECT COPIES FROM MY PERSONAL RECORDS.
6. I HAVE NEVER SEEN ANY PROOF OR EVIDENCE THAT DECLARATIONS, TESTAMENTS, AFFIDAVITS ARE NOT PRIMA FACIE PROOF OF THE TRUTH AND ACCEPTED AS SUCH IN THESE COURTS.

Subscribed To and Sworn To, Juris et de jure, Before God [Titus1:2] this 5th day of November 2024.

By: _____ [L.S./SEAL]
**Kelsey-Michele: Gordon**, cestui que vie,
jura summa imperri, in propria persona, sui juris en lex
Without Recourse, Without Prejudice,
All Rights Retained.

## CERTIFICATE/PROOF OF SERVICE

I hereby certify that on this **5th** day of the Month of **November**, in the Year of Our Lord **Two-Thousand and Twenty-Four (2024)**, I am depositing via United States Postal Service, (OR Next day Delivery/Fed Ex/Online Court Portal) under necessity, a true and correct copy of the foregoing document upon the person in the manner indicated below.

Sworn under penalty of perjury under the laws of the state of OREGON, MASSACHUSETTS AND 28 USC 1746.

To:    UNITED STATES DISTRICT COURT OF MASSACHUSETTS
       THE JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
       1 COURTHOUSE WAY, SUITE 2300
       BOSTON, MA 02210
       ☐ HAND DELIVERY ☒ PRIORITY ☐ CERTIFIED ☐ REGISTERED MAIL
       ☒ FILED WITH COURT ☐ EMAIL/FAX
       USPS TRACKING NUMBER: EI 364 779 817 US

       CELINA CARMELLA ANTONELLIS, (ATTORNEY ID NO. 708904)
       MORGAN, LEWIS & BOCKIUS, LLP.
       ONE FEDERAL ST, STE 1800
       BOSTON, MA 02110
       ☐ HAND DELIVERY ☐ PRIORITY ☒ CERTIFIED ☐ REGISTERED MAIL
       ☐ FILED WITH COURT ☒ EMAIL/FAX
       USPS TRACKING NUMBER: 9589 0710 5270 0344 4692 32
       Email Address: celina.antonellis@morganlewis.com

       KERI LYNNE ENGELMAN, (ATTORNEY ID NO. 704360)
       MORGAN, LEWIS & BOCKIUS, LLP.
       ONE FEDERAL ST, STE 1800
       BOSTON, MA 02110
       ☐ HAND DELIVERY ☐ PRIORITY ☒ CERTIFIED ☐ REGISTERED MAIL
       ☐ FILED WITH COURT ☒ EMAIL/FAX
       USPS TRACKING NUMBER: 9589 0710 5270 0344 4692 49
       Email Address: keri.engelman@morganlewis.com

       DANIEL ARNOLD KADISH, (ATTORNEY ID NO. 5293477)
       MORGAN, LEWIS & BOCKIUS, LLP.
       101 PARK AVE.
       NEW YORK, NY 10178-0060
       ☐ HAND DELIVERY ☐ PRIORITY ☒ CERTIFIED ☐ REGISTERED MAIL
       ☐ FILED WITH COURT ☒ EMAIL/FAX
       USPS TRACKING NUMBER: 9589 0710 5270 0344 4692 56
       Email Address: daniel.kadish@morganlewis.com

By: _____ [L.S./SEAL]
   **Kelsey-Michele: Gordon**, cestui que vie,
   jura summa imperri, in propria persona, sui juris en lex
   Without Recourse, Without Prejudice,
   All Rights Retained.